# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| TRANSCO LINES, INC., | |
|     Plaintiff, | |
|   v. | |
| EXTRA LOGISTICS, INC., | |
|     Defendant. | No. 16 CV 10982 |
| and | Judge Manish S. Shah |
| EXTRA LOGISTICS, INC., | |
|     Third-Party Plaintiff, | |
|   v. | |
| ADRIATIC INSURANCE COMPANY, | |
|     Third-Party Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Transco Lines contracted with defendant and third-party plaintiff Extra Logistics to transport cargo across state lines. After Extra Logistics's truck crashed and damaged the cargo, Transco Lines sued Extra Logistics. An investigation revealed that the identity of the driver at the time of the accident was not Extra Logistics's employee; it was the employee's girlfriend. Extra Logistics sought coverage from its insurer, third-party defendant Adriatic Insurance Company; but, Adriatic refused to indemnify Extra Logistics for this accident in part because the truck was hauling cargo of a different quantity and kind than what

the policy allowed. In turn, Extra Logistics sued Adriatic for denying its claim and for violating 215 ILCS 5/155. Adriatic and Extra Logistics filed cross-motions for summary judgment. For the following reasons, Adriatic's motion is granted and Extra Logistics's motion is denied.

I.   **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018). On cross-motions for summary judgment, a court must draw inferences "in favor of the party against whom the motion under consideration [was] made." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (citation omitted). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 Fed. App'x. 92, 95 (7th Cir. 2012).

**II.  Facts**

Extra Logistics, an interstate motor carrier, reached an agreement with Transco Lines, an interstate property broker, to transport cargo from Texas to Oregon under Transco's Broker Carrier Agreement. [81] ¶¶ 1–3.[1] The Broker Carrier Agreement required Extra Logistics "to procure and maintain, at its sole cost and expense" insurance "in an amount not less than $100,000 (U.S. Dollars) per occurrence." *Id.* ¶ 4. Extra Logistics obtained such a policy with Adriatic Insurance Company, titled Commercial Motor Truck Cargo Policy. *Id.* ¶ 9; *see also* [81-3]. The policy provided: "[Adriatic] hereby agrees to indemnify [Extra Logistics] for all risks of physical loss or damage from an external cause to the Description of Merchandise described in the Declarations in and/or on a truck while in their care, custody or control in the ordinary course of transit." [81] ¶ 12. The "Description of Merchandise" described in the Declarations of the Policy states: "BUILDING MATLS. 20%, DRY GOODS 30%, PAPER 10%, GROCERIES 20%, OFFICE SUPPLIES 10%, PLASTIC 10%." *Id.* ¶ 15.

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. In addition to the page number from the CM/ECF header, citations to depositions also include the page and line numbers from the deposition transcript. The facts are largely taken from Extra Logistics's Local Rule 56.1(a) statement, [81], and Adriatic's responses, [88], as well as from Extra Logistics's responses to Adriatic's Local Rule 56.1(b) statement, [94], where both the asserted fact and the opposing party's responses are set forth in one document. To a lesser extent, the facts are also taken from: (1) Extra Logistics's responses to Adriatic's Local Rule 56.1(a) statement, [90], where both the asserted fact and the opposing party's responses are set forth in one document; and (2) Extra Logistics's Local Rule 56.1(b) statement, [90], and Adriatic's responses, [92]. When the parties raised arguments in their statements, included additional facts in their responses or replies, failed to support their statements by admissible evidence, or failed to cite to supporting material in the record, I disregarded those portions of those statements, responses, or replies. *See* LR 56.1(b)(3)(C) (facts are deemed admitted if not properly controverted).

The truck Extra Logistics used to transport the cargo for Transco crashed, damaging the cargo. *Id.* ¶¶ 5–6. Since Extra Logistics's policy with Adriatic was effective at the time of the accident, *id.* ¶ 9; *see also* [81-3], Extra Logistics directed its insurance broker to provide Adriatic with notice of the loss. [81] ¶ 17. The day after the accident, the insurance broker submitted an "Accord Loss Notice" form, on Extra Logistics's behalf, to Adriatic. [94] ¶ 11.

The parties agree that the Accord Loss Notice form listed Alisher Khujabekov as the driver, *id.* ¶ 12[2]; but, the parties do not agree on the true identity of the driver at the time of the accident—Adriatic relies on the police report to assert that Rano Narkuzieva[3] was driving when the vehicle crashed, *id.* ¶ 9; [78-5] at 2, and Extra Logistics disputes (but does not controvert) that fact, [94] ¶ 9. The record does not show that the author of the Accord Loss Notice had personal knowledge about the accident or the identity of the driver; as such, the statement in that form identifying Khujabekov as the driver cannot be asserted for the truth of the matter. *See* Fed. Rule Evid. 802. On the other hand, the police report is admitted as a public record, *see* Fed. Rule Evid. 803(8); the statement in that record that Narkuzieva was the driver can be asserted for the truth of the matter. Absent any evidence to the contrary, the court may rely on the police record, which identifies Narkuzieva as the driver at the time of the accident. It is undisputed that Narkuzieva was not and is not an employee of or a driver for Extra Logistics. [94] ¶ 10. Relatedly, Adriatic

---

[2] The statement of fact spells the employee's first name as "Allsher"; elsewhere in the record, however, the employee's first name is spelled "Alisher." *See* [78-5] at 2; [78-6] ¶ 1.

[3] Extra Logistics believes Narkuzieva was Khujabekov's girlfriend at the time of the accident. [78-6] ¶ 1.

4

asserts that Narkuzieva is not a declared driver under the policy, [94] ¶ 24 (citing [78-9] ¶ 11); Extra Logistics disputes this assertion by arguing that the policy does not contain a list of declared drivers, [94] ¶ 24. Extra Logistics is incorrect. The policy incorporates Extra Logistics's application for insurance, [78-4] at 3; and in its application for insurance, Extra Logistics provided Adriatic with its list of drivers, which included Khujabekov's name and did not include Narkuzieva's. *Id.*

Adriatic received notice of the loss a few days after the crash. [81] ¶ 17. That same day, Adriatic sent a response letter to Extra Logistics, which stated in relevant part that Adriatic was "enclosing a copy of [Extra Logistics's] Sworn Statement of Cargo Loss to be completed in its entirety by [Extra Logistics]." [94] ¶ 13; [78-8] at 1. Extra Logistics disputes that the Sworn Statement of Cargo Loss was included with that letter; it notes that the copy of the letter that Adriatic submitted as a supporting exhibit does not include the blank form; but, Extra Logistics does not controvert this fact by citing anything in the record that establishes that it did not receive that form. [94] ¶ 13. Since the letter is admissible as a business record, *see* Fed. Rule Evid. 803(6)(B), the statement in the letter that the Sworn Statement of Cargo Loss was attached can be accepted for the truth of the matter. Adriatic never received a completed sworn statement from Extra Logistics, [78-9] ¶ 4, and Adriatic never agreed to extend the time for Extra Logistics to complete and provide the Sworn Statement of Cargo Loss. [94] ¶ 21.

Several months later, the owner of the cargo made a claim against Transco for $128,595.31 (the sum the owner had to pay for the damaged cargo). [81] ¶ 24. A

week later, Transco forwarded that claim and supporting materials to Adriatic. *Id.* ¶ 26; *see also* [81-2] ¶ 20. Two days later, Adriatic wrote Extra Logistics to deny its cargo damage claim. [81] ¶ 34. The letter stated, in relevant part:

> Upon receipt [of a notice of loss], we sent you claim forms requesting information from you such as the bill of lading, copies of the tow charges, sub-haul agreements, etc. In spite of several requests, you failed to present your claim. Our file has been closed for lack of interest.
>
> Recently, we have been contacted by the cargo broker for this load who informs us that they are starting legal action to obtain the cost of the loss which is $128,595.31.
>
> In reviewing the paperwork, it appears you were hauling oilfield equipment since the product shows generators, hydraulic valves, pumps along with machinery and related items not described in your policy. . . .
>
> When we accepted your proposal/application for coverage it was attested by you . . . that your operators transported building materials, dry goods, paper, grocery items, office supplies and plastics. We were never told you would haul machine parts and/or oilfield equipment. . . .
>
> I would also point out one more fact that the load value for this trip was very much in excess of the limit of liability that you paid premium for.
>
> In any case, I am informing you that we are denying any and all liability for this loss for all of the aforementioned and we are closing our file without payment.

[81-6] at 2–3. Extra Logistics's theory of its case is that the damaged cargo qualified as "building materials," a category that appeared in the Description of Merchandise. The policy does not define "Building matls." (much less "building," "materials," or "building materials"). [81] ¶ 16. But, Adriatic admits that Extra Logistics's claim

6

would have been covered if the damaged cargo constituted "building materials."[4] *Id.* ¶ 37. Despite its usual claims-investigation practices, before denying the claim, Adriatic did not contact the shippers affected by the accident to verify what property was damaged; Adriatic did not contact the intended recipients regarding the cargo; Adriatic did not physically or visually inspect the cargo; and Adriatic did not conduct any internet research to ascertain what the product was and what its uses were. *Id.* ¶¶ 31, 63–64.

Transco filed suit against Extra Logistics. *Id.* ¶ 57. Extra Logistics then asked Adriatic to contact the law firm to "straighten things out"; Extra Logistics also provided the bill of lading for the loss and explained to Adriatic that it was carrying "small [FedEx] packages and not oilfield equipment" at the time of the accident. *Id.* ¶ 58. Shortly thereafter, and without reevaluating the claim or performing any additional investigation, Adriatic reiterated its denial of the claim to Extra Logistics. *Id.* ¶¶ 60–61. That denial letter stated, in relevant part:

> We were apprised of this claim on November 20, 2015 and you were provided with claim forms to complete. You ignored our efforts to provide us copies of bill of ladings and paperwork from your cargo broker. It was not until September, 2016 that we were queried by . . . Transco Lines concerning the claim.
>
> We wrote to you on September 9, 2016 whereas we outlined our position and denied coverage. You told us in your application/proposal for coverage you would transport building materials, dry goods, paper, grocery items, office supplies and

---

[4] Adriatic admits that the intended use of the product is not relevant to the determination of whether the products were "building materials," [81] ¶ 39; so, if the cargo included steel that would be used to construct a building, Adriatic would still deny a claim for damage to that cargo as involving steel and not "building materials." [81] ¶ 51.

7

> plastic. You also stated your load values would not exceed $100,000. This was not the case on [the date of the accident].
>
> Our agreement to indemnify you in the Insuring Agreement of your policy provides coverage only for merchandise described in your policy declarations. This is how we determine what the premium is to insure you for these products. . . .
>
> We are again denying all liability in this matter and closing our file. You should engage legal counsel to represent you in this matter since there are no provisions in the Adriatic policy to defend you.

[81-1] at 141–42. In turn, Extra Logistics filed its third-party complaint against Adriatic. [22].

Notwithstanding the denials, one of Adriatic's employees sent Extra Logistics a second and final request for a proof of loss statement. [90] ¶¶ 71–72. Adriatic emphasizes that their employee was not authorized to send those requests, and they demoted that employee as a result of those unauthorized requests. [92] ¶¶ 71–72. Adriatic's president said that the requests were a "total mistake." [90] ¶ 73.

### III. Analysis

Adriatic moved for summary judgment, arguing that Extra Logistics's claim is invalid under Section 2 and Section 14 of the insurance policy; that it may deny the claim under Endorsement MFT-6 of the policy; that the claim is not covered by the policy because the cargo was not identified in the Description of Merchandise; and that it did not wrongfully refuse coverage under the policy, in violation of 215 ILCS 5/155. *See* [78-1]. Extra Logistics filed a cross-motion for summary judgment, arguing that the policy covers the damaged cargo and that Adriatic's denial of coverage was unreasonable and vexatious under 215 ILCS 5/155. *See* [80]. In

briefing both motions, the parties recycled the same arguments to assert them offensively or defensively, as needed. As a result, Adriatic's opening summary judgment brief, its reply brief, and its response brief in opposition to Extra Logistics's motion for summary judgment are substantially similar; the same is true of Extra Logistics's opening summary judgment brief, its reply brief, and its response brief in opposition to Adriatic's motion for summary judgment.

### A. Section 2, "Proof of Loss"

Section 2 of the insurance policy requires Extra Logistics to send Adriatic, within sixty days of loss or damage, "a proof of loss statement in the form supplied by [Adriatic] signed and sworn to by [Extra Logistics], stating the place, time and cause of the . . . loss or damage, the sound value thereof and the amount of loss or damage thereto." [78-4] at 4. It further provides that failure to timely notify Adriatic "shall invalidate any claim under this Policy." *Id.* The undisputed record establishes that Adriatic provided Extra Logistics a Sworn Statement of Cargo Loss for completion, but that Extra Logistics never returned the form to Adriatic. It follows that Extra Logistics violated Section 2.

Extra Logistics argues that failure to comply with Section 2 does not bar its claim. First, according to Extra Logistics, Adriatic focuses on the wrong section for the notice provision—Section 1 is the notice provision, not Section 2. Extra Logistics complied with Section 1, the argument continues, because it notified Adriatic, through its insurance broker, of the loss right away, and Section 1 only requires

notice "as soon as practical." *See* [78-4] at 4. That quotation misrepresents what Section 1 provides. The phrase came from the following sentence in Section 1:

> Notice of Loss: - It is warranted that the Insured shall as soon as practical, but in no event not more than thirty (30) days, report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim within this policy and shall also file with the Company or its agent within sixty (60) days from discovery of such loss, damage or occurrence a detailed sworn proof of loss.

*Id.* Based on this language, as Adriatic points out, Extra Logistics failed to abide by Section 1 and Section 2. When Extra Logistics did not provide Adriatic with a sworn proof of loss within sixty days of discovery of the damage, it violated Section 1; and when Extra Logistics did not provide Adriatic with the Sworn Statement of Loss that Adriatic provided within sixty days of the damage, Extra Logistics violated Section 2.

Next, Extra Logistics argues that Adriatic waived its ability to rely on Section 2 as a defense because Adriatic accepted and adjusted the cargo claim without raising a notice issue, and then Adriatic denied the claim on a different basis. *See Mathis v. Lumbermen's Mut. Cas. Ins. Co.*, 354 Ill.App.3d 854, 857 (5th Dist. 2004) ("When an insurer denies liability for a loss claimed to be covered under the policy on grounds other than the insured's failure to file a proof of loss, the insurer waives compliance with the proof-of-loss requirement."). But, as Adriatic notes, the denial letter outlined two bases for Adriatic's decision, one of which was that Extra Logistics ignored Adriatic's several requests for information. Adriatic did not need to cite Section 2 in its denial letter in order to preserve that defense;

10

providing this explanation was sufficient: "In spite of several requests, you failed to present your claim. Our file has been closed for lack of interest. *See* [81-6] at 2.

Finally, Extra Logistics argues that waiver should still apply because allowing Adriatic to assert the defense now would be "unjust, inequitable or unconscionable," [89] at 4–5 (quoting *O'Brien v. Country Mut. Ins. Co.*, 105 Ill.App.2d 21, 24 (1st Dist. 1969) (citation omitted)), given that a Sworn Statement of Cargo Loss would not have yielded Adriatic any additional information—Extra Logistics, through its insurance broker, immediately provided Adriatic with all the information it had about the accident in the Accord Loss Notice and Adriatic did nothing in response to investigate the claim or to ensure that Extra Logistics complied with the requests for information. Indeed, Adriatic (mistakenly) sent Extra Logistics a second follow-up request after it had originally denied the claim, and a final follow-up request after it had reiterated its decision to deny the claim. It was not until the owner of the cargo made its claim in August 2016, Extra Logistics explains, that it had the information concerning the claim; and there is no dispute that Adriatic received that same information promptly.

Adriatic rejects the notion that is failure to follow its own business practices has any bearing on the policy's applicability; it is dispositive that Extra Logistics violated the policy's notice requirement, Adriatic argues. This point is persuasive. The policy does not excuse Extra Logistics from its notice obligations in the event that Adriatic mishandles the claim investigation. And the record clearly shows that Extra Logistics breached Section 2 of the policy. Extra Logistics's reliance on

11

*O'Brien* does not change this conclusion. In *O'Brien*, the court concluded that the insurer waived its reliance on the policy's time limitation because the plaintiff specifically alleged that his negotiations with the insurer gave him reasonable hope that adjustment would be possible and that filing a lawsuit was not necessary. Extra Logistics has not shown that Adriatic's actions affected its responses or litigation strategy. Absent evidence of an unjust, inequitable, or unconscionable result stemming from the defense, there is no waiver. Adriatic is entitled to summary judgment on this issue.

B.  **Section 14, "Misrepresentation and Fraud"**

Section 14 voids the policy if "the Insured has concealed or misrepresented any material fact or circumstances concerning this insurance or the subject matter thereof." [78-4] at 5. Adriatic accuses Extra Logistics of making the following material misrepresentations in its responses to the "Automobile Loss Notice" form: (1) providing negative responses in the boxes titled "Police or Fire Department Contacted" and "Report Number," despite evidence in the record that shows that police came to the scene and filled out a report, and (2) listing "Alisher, Khujabekov" as the driver's name despite evidence in the record that he was not the driver, *see* [78-7].

Extra Logistics argues that it is not responsible for the representations made in that form, and that the form does not contain any misrepresentations, let alone material ones. Specifically, Extra Logistics places the blame on its insurance broker, which filled out the form. Since insurance policies with short notice periods must be

12

strictly construed against the insurer, *see Michigan Ave. Nat. Bank of Chi. v. Evans, Inc.*, 176 Ill.App.3d 1047, 1059 (1st Dist. 1988)), and because the policy only references misrepresentations "by the Insured," [89] at 6, Extra Logistics argues that Section 14 does not void the policy here. That is not quite right. Section 14 states:

> This entire Insurance shall be void if the Insured has concealed or misrepresented any material fact or circumstances concerning this Insurance or the subject matter thereof, or in case of any fraud, attempted fraud or false oath by the Insured touching any matter relating to this Insurance or the subject matter thereof whether before or after a loss.

[78-4] at 5. The part of the policy Extra Logistics quoted applied to fraud; but, Adriatic's accusation is not about fraud, it concerns material misrepresentations. Bu the argument is the same, because that part of the policy similarly envisions "the Insured" as the relevant actor. The record shows that the CEO of Extra Logistics "directed" its insurance broker to submit a claim to Adriatic concerning the accident. [60-1] ¶¶ 2, 14; [60-5]. Extra Logistics did not cite any authority for an exception to agency principles that hold organizations responsible for their agents' actions. As such, Extra Logistics is on the hook for the representations (or material misrepresentations) that it authorized its insurance broker to make on its behalf in filing a claim with Adriatic.

Extra Logistics denies that the responses on the form suggest that the police did not respond to the accident or that a police report did not exist. Extra Logistics maintains that a police report was not available until two days after the Automobile Loss Notice was filled out and the "no report," response in the box concerning the

13

police report number reflects that fact. [89] at 7. Effectively, Adriatic's position is that Extra Logistics should have entered an unequivocal "Yes" in the box inquiring about whether the police were contacted and it should have provided something more descriptive, like "Not available" or "Unknown" in the box inquiring about the police report number. And Adriatic highlights the fact that the police issued the driver a citation for unsafe speed, which was another reason why Extra Logistics's response should not have been "No report." *See* [78-5] at 3. Drawing inferences in Extra Logistics's favor, though, it does not follow that Extra Logistics's responses to those two boxes on the form constituted misrepresentations—a factfinder could conclude that Extra Logistics was merely imprecise.

The same cannot be said about Extra Logistics's identifying Khujabekov as the driver. Extra Logistics says it believed that Khujabekov was the driver at the time of the accident, but Extra Logistics does not cite anything in the record to support that belief. Extra Logistics points to a bill of lading, which lists Khujabekov as the driver, [81-2] at 10, ¶43; *id.* at 78; *id.* at 81, as evidence that is "consistent" with its belief at that time that Khujabekov was the driver, [89] at 6–7; but as Adriatic points out, the bill of lading would only show that Khujabekov was the driver at the time that load was picked up—not when the accident occurred. It was not truthful for Extra Logistics to list Khujabekov as the driver in this submission to Adriatic.

Even if the form contains misrepresentations, Extra Logistics argues that they were not material. Its logic is that Adriatic cannot claim the information in the

14

form was material because Adriatic had equal access to the same information and Adriatic would have acquired that information if Adriatic had not abandoned its business practice of performing its own investigation of the claim. Information is material if it is consequential to the issue at hand; Extra Logistics cite no authority for the proposition that such consequential information loses its materiality if an individual has other means of obtaining that information.

Adriatic presented evidence showing that if Adriatic had known the true identity of the driver, Adriatic would have denied Extra Logistics's claim because the accident involved a non-authorized driver. [91] at 7 (citing [78-9] ¶¶ 9–10). Extra Logistics combats this evidence by pointing to Adriatic's Rule 30(b)(6) deposition, in which Adriatic said that it does not exclude coverage for non-declared drivers. [81-1] at 11, 36:5–15 (in response to a question about whether Adriatic wants to know some information about the drivers in the application process, the response was: "Probably so. Although we have no real exclusions for drivers."). Since the deposition testimony is about Adriatic's policy exclusions in general, and the evidence Adriatic offered is about the specific policy with Extra Logistics, it is not true that the former creates a dispute of fact with the latter. Moreover, the policy contains an unambiguous provision that permits Adriatic to deny a claim in the event that an undeclared driver is involved. *See* [78-4] at 10.

This language, along with Adriatic's affirmative representation that but for seeing Khujabekov identified as the driver, it would have denied coverage to Extra Logistics, establishes that coverage in this case depended, in part, on there being an

15

authorized driver at the time of the accident. Consequently, identifying Khujabekov as the driver in the Automobile Loss Notice was a material misrepresentation. Adriatic is entitled to summary judgment on this issue.

C. **Endorsement MFT-6, "Undeclared Drivers"**

Endorsement MFT-6 amends the policy to include a requirement that the insured "report all drivers . . . at the inception of the policy or within 10 days of hire." [78-4] at 10. It further states that "[a]ny undeclared driver who is not acceptable to [the] underwriting guidelines may result in a denial for any claim that occurs where the driver is operating or is in the care of an insured vehicle." *Id.* As previously stated, Adriatic argues that if it had known that a non-authorized driver was driving the truck at the time of the accident, Adriatic would have denied Extra Logistics's claim pursuant to Endorsement MFT-6.

Extra Logistics again argues that Adriatic waived this defense. "'[W]aiver' is 'the intentional relinquishment of a known right,'" *Allstate Ins. Co. v. National Tea Co.*, 25 Ill.App.3d 449, 461 (1975) (citation omitted); and because Extra Logistics concealed the identity of the driver from Adriatic by putting false information in the form, Adriatic did not have the information necessary to deny the claim based on Endorsement MFT-6 or to relinquish its right to that defense.

If not waived, Extra Logistics argues that the defense is useless since Endorsement MFT-6's language is advisory—it says a violation of this section "may" result in a denial of the claim—and the policy does not include a list of declared drivers nor does it provide that only declared drivers are covered. Even if the

16

language is advisory, Adriatic presented evidence showing that had Adriatic known the true identity of the driver, Adriatic would have denied Extra Logistics's claim because the accident involved a non-authorized driver. [91] at 7 (citing [78-9] ¶¶ 9–10). As stated above, the policy incorporates Extra Logistics's application for insurance, [78-4] at 3, and the application includes Adriatic's list of drivers, [78-3] at 4. With the right set of information, Adriatic could have denied Extra Logistics's claim by comparing the police report to the list of drivers and citing Endorsement MFT-6. Summary judgment is granted in Adriatic's favor on this issue.

### D. Description of Merchandise

Extra Logistics moves for summary judgment, arguing that Adriatic should have paid its claim because the policy's Description of Merchandise included coverage for "building materials," which was an accurate description of the damaged cargo. The policy does not define "building materials" and Adriatic does not agree that the cargo consisted of building materials, hence the claim denial. This court does not reach this dispute, however, because Adriatic was entitled to deny Extra Logistics's claim under the policy—whether or not the damaged cargo was represented in the Description of Merchandise no longer matters. Extra Logistics's motion for summary judgment is denied on this issue, and Adriatic's motion for summary judgment is granted on this issue.

### E. Damages Under 215 ILCS 5/155

Extra Logistics seeks damages under § 155 of the Illinois Insurance Code because of Adriatic's conduct in refusing to pay Extra Logistics's claim. Section 155

provides that in an action against the insurer where there is an issue of liability or of the amount payable under the policy, the court may award the plaintiff reasonable attorney's fees, costs, and monetary sanctions if the insurer's refusal to pay a claim was "vexatious and unreasonable." 215 ILCS 5/155(1); *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 174 Ill.2d 513 (1996)). Courts must consider the totality of the circumstances in assessing an insurer's conduct; and an insurer's conduct is not vexatious and unreasonable if there is a bona fide dispute concerning coverage; there is a legitimate policy defense; the claim presents a genuine legal or factual issue regarding coverage; or the insurer takes a reasonable legal position on an unsettled issue of law. *TKK USA, Inc. v. Safety Nat. Cas. Corp.*, 727 F.3d 782, 793 (7th Cir. 2013).

Although Extra Logistics devotes many pages of its summary judgment brief to outline what it perceives was Adriatic's objectionable behavior—characterizing the cargo as oilfield equipment and/or machinery, not giving a moment's thought to whether the cargo qualified as building materials, failing to follow its own claims-investigation procedures, etc.—those points are not persuasive here. Given this court's conclusions that Section 2 and Section 14, as well as Endorsement MFT-6 provide bases to deny coverage here, it necessarily follows that there was a bona fide dispute concerning coverage and that Adriatic had a legitimate policy defense. Extra Logistics may not recover damages under § 155. Extra Logistics's motion for

summary judgment is denied on this issue; Adriatic's motion for summary judgment is granted on this issue.

## IV. Conclusion

Adriatic's motion for summary judgment, [78], is granted. Extra Logistics's motion for summary judgment, [79], is denied.

ENTER:

                                                                                           ／s／ Manish S. Shah
                                                                                           Manish S. Shah
                                                                                           United States District Judge

Date: August 21, 2018