UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRANSCO LINES, INC., | |
|     Plaintiff, | |
|   v. | |
| EXTRA LOGISTICS, INC., | |
|     Defendant. | No. 16 CV 10982 |
| and | Judge Manish S. Shah |
| EXTRA LOGISTICS, INC., | |
|     Third-Party Plaintiff, | |
|   v. | |
| ADRIATIC INSURANCE COMPANY, | |
|     Third-Party Defendant. | |

MEMORANDUM OPINION AND ORDER

Plaintiff Transco Lines contracted with defendant Extra Logistics to transport cargo across state lines. After Extra Logistics's truck crashed, Extra Logistics refused to pay for the damaged cargo per its agreement with Transco, and Transco sued Extra Logistics for breach of contract. Transco and Extra Logistics filed cross-motions for summary judgment. For the following reasons, Transco's motion is granted and Extra Logistics's motion is denied.

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must view all facts and reasonable inferences in the light most favorable to the non-moving party. *Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018). On cross-motions for summary judgment, a court must draw inferences "in favor of the party against whom the motion under consideration [was] made." *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 658 (7th Cir. 2005) (citation omitted). "Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute." *Bloodworth v. Vill. of Greendale*, 475 Fed. App'x. 92, 95 (7th Cir. 2012).

## II. Facts

Extra Logistics agreed to transport a load of FedEx freight on behalf of Transco from Texas to Oregon, as per the Broker Carrier Agreement. [60] at 1, ¶ 1.[1]

---

[1] Bracketed numbers refer to entries on the district court docket. Page numbers are taken from the CM/ECF header at the top of filings. The facts are largely taken from Extra Logistics's responses to Transco's Local Rule 56.1(a) statement, [60], and Transco's responses to Extra Logistics's Local Rule 56.1(a) statement, [72], where both the asserted

During that transport, Extra Logistics's truck crashed; the accident damaged the FedEx freight. *Id.* at 2, ¶¶ 3–4. FedEx demanded $128,595.31 from Transco for that damaged cargo.[2] [57-7] at 2. Because of its agreement with FedEx, Transco paid the cargo claim ($128,595.31). [60] at 5, ¶ 10; [57-1] ¶ 8; [57-7] at 3. Transco sought payment and indemnification from Extra Logistics, per their agreement, but Extra Logistics refused to comply. [60] at 4, ¶ 9 (citing [57-1] ¶ 7).

There are three sections of the Broker Carrier Agreement that are relevant here:

> 6. INDEMNITY. CARRIER shall defend, indemnify, and hold BROKER harmless from and against all loss, liability, damage, claim, fine, cost or expense, including reasonable attorney's fees, arising out of or in [any] way related to the performance or breach of this Agreement by CARRIER, . . . including but not limited to, Claims for . . . property damage. . . .
>
> 7. INSURANCE. . . . (b) All Risk Broad Form Motor Truck Cargo Legal Liability insurance in an amount not less than $100,000.00 (U.S Dollars) per occurrence. Such insurance policy

---

fact and the opposing party's responses are set forth in one document. The facts are also taken from: (1) Extra Logistics's Local Rule 56.1(b) statement, to which Transco did not respond; and (2) Transco's "Statement of Additional Undisputed Material Facts," [62]; Extra Logistics moved to strike that filing, and although this court acknowledged that Local Rule 56.1 does not have a provision for adding facts in that manner, it denied Extra Logistics's motion and instead invited Extra Logistics to file a sur-reply addressing those facts, *see* [70]. Ultimately, Extra Logistics did not file a sur-reply. When the parties raised arguments in their statements, included additional facts in their responses or replies, failed to support their statements by admissible evidence, or failed to cite to supporting material in the record, I disregarded those portions of those statements, responses, or replies. *See* LR 56.1(b)(3)(C) (facts are deemed admitted if not properly controverted).

[2] FedEx paid 47% of the total claimed by its customers, and Transco interpreted that payment as an indication that the remaining 53% of the total claimed represented the salvage value. [62] ¶ 18. Because Transco had no information or evidence that FedEx's valuation of the salvage was incorrect, and because it is the custom and practice of trucking companies to rely upon the records of salvage valuations of companies such as FedEx that are experienced in making such valuations for cargo claims, Transco accepted FedEx's calculations. *Id.*

3

shall name CARRIER and BROKER as insureds and provide coverage to BROKER, the Customer or the owner and/or consignee for any loss, damage or delay related to any property coming into the possession of Carrier under this agreement. . . .

8. FREIGHT LOSS, DAMAGE OR DELAY. . . . CARRIER assumes the liability of a common carrier (i.e. Carmack Amendment liability) for loss, delay, damage to or destruction of any and all of Customer's goods or property while under CARRIER's care, custody to control. CARRIER shall pay to BROKER, or allow BROKER to deduct from the amount BROKER owes CARRIER, Customer's full actual loss for the kind and quantity of commodities so lost, delayed, damaged or destroyed. CARRIER shall be liable to BROKER for the Customer for any freight loss, damage or delay claim. Payments by CARRIER to BROKER or its customer, pursuant to the provisions of this section, shall be made within thirty (30) days following receipt by CARRIER of BROKER's or Customer's invoice and supporting documentation for the claim.

[60-2] at 2–3, §§ 6–8. The parties interpret each of these sections differently.

### III. Analysis

The parties both agree that the Broker Carrier Agreement applies here; but they disagree as to whether Extra Logistics is liable for the damaged cargo under the agreement. Transco moves for summary judgment, arguing that the agreement confers liability on Extra Logistics under the Carmack Amendment. Extra Logistics responds that Transco may not bring suit under the Carmack Amendment because Transco is a broker, not a shipper.

The Carmack Amendment to the Interstate Commerce Act attempted to simplify the "patchwork of regulation" surrounding the interstate transportation of goods by creating "a nationally uniform rule of carrier liability concerning interstate shipments." *REI Transp., Inc. v. C.H. Robinson Worldwide, Inc.*, 519 F.3d 693, 697

(7th Cir. 2008) (citation omitted). It allows a "person entitled to recover" under the statute to bring suit against any motor carrier for the "actual loss or injury" during the interstate shipment, thereby giving a shipper confidence that the carrier will be liable for damage during transport, and allowing a carrier to assess (and insure against) liability risks. *Id.* (quoting 49 U.S.C. § 14706(a)(1)). Typically, shippers bring suit against carriers under the Carmack Amendment. And as Extra Logistics points out, some courts have found that brokers are not entitled to bring Carmack Amendment suits, *see Exel, Inc. v. Southern Refrigerated Transp., Inc.*, 807 F.3d 140 (6th Cir. 2015); *Traffic Tech, Inc. v. Arts Transp., Inc.*, No. 15 C 8014, 2016 WL 1270496 (N.D. Ill. Apr. 1, 2016); but, that remains an open question in the Seventh Circuit.

Transco insists that this developing case law about who may bring suit under the Carmack Amendment is irrelevant here because freedom of contract principles empowered the parties to contract around such limitations and affirmatively opt into the Carmack Amendment's set of obligations. This may be true, but it is not a fair characterization of the parties' agreement. The agreement mentions the Carmack Amendment once: "CARRIER assumes the liability of a common carrier (i.e. Carmack Amendment liability) for loss, delay, damage to or destruction of any and all of Customer's goods or property while under CARRIER's care, custody to control." [60-2] at 3, § 8. In other words, § 8 requires Extra Logistics to acknowledge that it may be held liable under the Carmack Amendment, but it does not say that Transco may bring a Carmack Amendment claim against Extra Logistics. Transco's

5

reading does not jibe with the subsequent sentences in § 8, which outline how Transco may recover its customer's actual loss from Extra Logistics and the deadline by which Extra Logistics must make such payments. If the purpose of § 8 was to provide that Transco may bring a Carmack Amendment claim against Extra Logistics, the parties could rely on the wealth of case law that governs how to bring such claims, and those subsequent sentences in § 8 would not be necessary.

Absent any authority saying the Carmack Amendment applies here, it follows that the Carmack Amendment does not preempt Transco from bringing a breach of contract claim against Extra Logistics. *See Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 288–89 (7th Cir. 1997) (stating general preemption rule under the Carmack Amendment). Though Transco did not assert a breach of contract theory of liability in its opening brief supporting summary judgment, *see* [58], Transco's complaint alleges a breach of contract claim, *see* [1], and Extra Logistics anticipated such a claim—Extra Logistics's response brief argues that it has "countervailing evidence to demonstrate a meritorious defense," which would be the subject of its own motion for summary judgment, *see* [59] at 6. In its later-filed cross motion for summary judgment, Extra Logistics argues that through § 7 of the agreement, the parties agreed to limit the risk of loss to $100,000 and to shift that risk to an insurance company; and that because Extra Logistics obtained such insurance, it cannot be held liable to Transco for the loss. As such, the parties have fully developed the breach of contract issue and this court may rule on it.

Extra Logistics's interpretation of § 7 is divorced from the section's plain language and it is in direct conflict with the unambiguous language of the preceding section. Section 7 merely requires Extra Logistics to procure and maintain cargo liability insurance for at least $100,000.00 per occurrence. Nothing about its language suggests that Extra Logistics could be released from liability if it fulfilled its insurance obligation or even if the damage exceeded $100,000.00. Indiana law, which applies here, *see* [60-2] § 16, requires releases from liability to be specific and explicit. *Powell v. Am. Health Fitness Ctr. of Fort Wayne, Inc.*, 694 N.E.2d 757, 761 (Ind. App. 1998). Because § 7 does not contain such language, there is no release of liability. Moreover, contracts must be read as a whole, *Tastee-Freez Leasing Corp. v. Milwid*, 365 N.E.2d 1388, 1390 (Ind. App. 1977), and § 6 requires Extra Logistics to indemnify Transco against all damage caused while cargo is in Extra Logistics's possession. Extra Logistics's interpretation of § 7 would contradict the clear directive of § 6 and render it superfluous. Contract interpretation does not work like that. Extra Logistics's motion for summary judgment is denied.

Extra Logistics breached § 6. *See* [63] at 4–5; [71] at 10–11. It is undisputed that the cargo was damaged while it was in Extra Logistics's possession and that Extra Logistics refused Transco's demand to pay for the damage. By doing so, Extra Logistics failed to fulfill its obligation under § 6 to indemnify Transco against all damage, cost, or expense. Indiana law requires a plaintiff to prove its breach of contract damages with reasonable certainty. *Entm't USA, Inc. v. Moorehead Commc'ns, Inc.*, No. 18 C 2847, 2018 WL 3580977, at *3 (7th Cir. 2018) (citing *R&R*

7

*Real Estate Co. v. C&N Armstrong Farms, Ltd.*, 854 N.E.2d 365, 370–71 (Ind. App. 2006)). This does not require mathematical certainty, but uncertainty in such calculations must be resolved against the wrongdoer. *Id.* at *5. Transco relies on the amount FedEx's customers accepted in return for the damaged cargo, which represented approximately 47% of the total claimed by the customers. Extra Logistics disputes that the shipment was damaged to the extent claimed, and it faults Transco for not inspecting the cargo before Extra Logistics took possession of it and after the crash. But, reasonable estimates are enough of support a damages award, so long as they are supported by a factual basis. *Id.* And as Transco established, it is common practice for trucking companies to rely on the records of companies like FedEx that are experienced in making salvage valuations for cargo claims. Consequently, Transco supported the damages award here with undisputed evidence. Transco's motion for summary judgment is granted.

Extra Logistics must pay Transco for the damaged cargo ($128,595.31), plus Transco's attorney's fees and costs associated with filing this action. [60-2] 2, § 6 (providing for attorney's fees arising out of a breach of the contract). The parties shall comply with Local Rule 54.1 and 54.3 with respect to any petition for fees and costs.

## IV. Conclusion

Transco's motion for summary judgment, [56], is granted. Extra Logistics's motion for summary judgment, [66], is denied. The clerk shall enter judgment in favor of Transco in the amount of $128,595.31 and judgment shall also enter in

8

favor of third-party defendant Adriatic Insurance Company for the reasons stated in the separate order granting its motion for summary judgment. Terminate civil case.

ENTER:

                                                                      Manish S. Shah
                                                                     United States District Judge

Date: August 21, 2018