# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

EXTRA LOGISTICS, INC.,

    Third-Party Plaintiff,

v.

ADRIATIC INSURANCE COMPANY,

    Third-Party Defendant.

No. 16 CV 10982

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

On August 21, 2018, I granted Adriatic Insurance Company's motion for summary judgment and denied Extra Logistics' motion for summary judgment. Extra Logistics moves for reconsideration under Federal Rule of Civil Procedure 59(e).

## I. Legal Standards

A party may move to amend or alter a judgment pursuant to Federal Rule of Civil Procedure 59(e). Fed. R. Civ. P. 59(e). The moving party must "clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013). A court may grant the motion "if the movant presents newly discovered evidence that was not available at the time of trial or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996). Such motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was

available earlier." *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012). A motion for reconsideration under Rule 59(e) "can be used . . . to ask that a judgment be set aside in its entirety." *A.D. Weiss Lithograph Co. v. Illinois Adhesive Prod. Co.*, 705 F.2d 249, 250 (7th Cir. 1983).

## II. Facts

Additional background relevant to the parties' dispute is laid out in the August 21, 2018 order. [97].[1] For convenience, I set forth the two provisions at issue from the insurance policy that Adriatic issued to Extra Logistics ([78-4] at 4):

> [§ 1] NOTICE OF LOSS: It is warranted that [Extra Logistics] shall as soon as practical, but in no event not more than thirty (30) days, report in writing to [Adriatic] or its agent every loss, damage or occurrence which may give rise to a claim within this policy and shall also file with [Adriatic] or its agent within sixty (60) days from discovery of such loss, damage, or occurrence a detailed sworn proof of loss.
>
> [§ 2] PROOF OF LOSS: Within sixty (60) days after loss or damage, unless such time is extended in writing by [Adriatic], [Extra Logistics] shall forward to [Adriatic] a proof of loss statement in the form supplied by [Adriatic] signed and sworn to by [Extra Logistics], stating the place, time and cause of the of the [sic] loss or damage, the sound value thereof and the amount of loss or damage thereto, all encumbrance thereon and all other insurance, whether valid and/or collectable or not, covering said property. Failure to notify [Adriatic] within the time scales above shall invalidate any claim under this policy.

---

[1] Bracketed numbers refer to entries on the district court docket.

### III. Analysis

#### A. Applicable Standards

Extra Logistics' first (and overarching) argument is that the August 21, 2018 order failed to apply the correct standards. [102] at 3–4. For instance, Extra Logistics cites the rule that exclusionary provisions that limit the time within which a claim may be advanced are not favored, strictly construed, *Michigan Ave. Nat. Bank of Chicago v. Evans, Inc.*, 176 Ill.App.3d 1047, 1059 (1st Dist. 1988), and may be waived even in the absence of strong proof of waiver. *O'Brien v. Country Mut. Ins. Co.*, 105 Ill.App.2d 21, 24 (1st Dist. 1969). Extra Logistics also points out that exclusionary provisions are to be "read narrowly and will be applied only where [their] terms are clear, definite, and specific," *Gillen v. State Farm Mut. Auto. Ins. Co.*, 215 Ill.2d 381, 393 (2005), and interpreted liberally in favor of Extra Logistics. *Am. States Ins. Co. v. Koloms,* 177 Ill.2d 473, 479 (1997). And Extra Logistics notes that once it demonstrates coverage, the burden shifts to Adriatic to prove that a limitation or exclusion applies. *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 454–55 (2009).

One of the standards Extra Logistics advances is without support in the law. Neither *Addison Insurance Co.* nor *Gillen* require that a provision's applicability be "clear" and "free from doubt." *See Addison*, 232 Ill.2d. 446 (2009); *Gillen*, 215 Ill.2d 381 (2005). At most, *Gillen* holds that the terms of the agreement must be clear in order to be enforced—not that the terms must "clearly" establish that the provision applies to the facts at hand. *See Gillen*, 215 Ill.2d at 393. Extra Logistics misapplies this standard repeatedly. [102] at 1, 3–6, 10–11; [111] at 5–6.

3

The August 21, 2018 order addressed and applied some of these standards (*see* [97] at 11–12 (citing *O'Brien*, 105 Ill.App.2d at 23–24); 13 (citing *Michigan Ave. Nat. Bank of Chicago,* 176 Ill.App.3d at 1059)). To the degree the August 21, 2018 order did not address or apply those standards, it was because the application of those standards was not required. *See* [97]. Since application of those standards is still not required here, Extra Logistics has not clearly established that there was a manifest error of law in the way they were applied in the August 21, 2018 order, [97]; *Cincinnati Life Ins. Co.*, 722 F.3d at 955, and it does not matter that Adriatic failed to address those standards in its response to Extra Logistics' motion to reconsider. *See* [111] at 2.

**B. Section 2**

Extra Logistics first takes issue with my finding that a blank, Sworn Statement of Cargo Loss form was supplied along with the November 23, 2015 letter. [102] at 4 (*citing* [97] at 9). Their tack is to argue that in so holding, I improperly "shifted the burden to Extra Logistics and improperly required it to prove a negative." *Id.*

Extra Logistics could have raised this argument before (neither the law nor the facts have changed since it filed its motion for summary judgment, [80], its response to Adriatic's motion for summary judgment, [89], or its reply in support of its motion for summary judgment, [93]) and yet it did not. Nor does Extra Logistics' motion for reconsideration address how the burden-shifting should be applied in the context of cross-motions for summary judgment, where Extra Logistics carried a

4

different burden in bringing its motion for summary judgment than it did when opposing Adriatic's. This complexity (and Extra Logistics' failure to resolve it) is a symptom of Extra Logistics' failure to timely raise the issue, which is in-and-of-itself sufficient reason to deny the motion. *See Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012) (Rule 59(e) is "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment").

In any event, the argument is inapposite. In its motion for summary judgment, Adriatic bore the burden of proving that there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. [97] at 2; Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The burden was on Adriatic to "prove that a limitation or exclusion applies." *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 453–54 (2009). *See also Dick v. New York Life Ins. Co.*, 359 U.S. 437, 446 (1959) ("[u]nder the Erie rule, presumptions (and their effects) and burden of proof are 'substantive'"); *McEwen v. Delta Air Lines, Inc.,* 919 F.2d 58, 59 (7th Cir. 1990) ("[s]tate law provides the burden of proof (more accurately, the risk of nonpersuasion) when it supplies the rule of decision").

Adriatic carried that burden by asserting that it sent the form and then supporting that assertion with specific references to the record. *See* [78-1] at 2; [90] ¶ 15.[2] Adriatic attached a letter to its motion for summary judgment, sent by Adriatic

---

[2] Because Adriatic carried its burden, it is unimportant that Adriatic did not challenge that it was required to carry the burden in the first place. *See* [111] at 4.

5

to Extra Logistics on November 23, 2015, that said, "we are enclosing a copy of your Sworn Statement of Cargo Loss to be completed in its entirety by you." [78-8]. On September 9, 2016, Joseph E. Taylor sent another letter confirming that Adriatic had "sent [Extra Logistics] claim forms." [81-6] at 1.

In its response to Adriatic's statement of facts, Extra Logistics "dispute[d] that it was ever supplied with a Sworn Statement of Cargo Loss Form from Adriatic," and asserted without support that the letter had arrived without any attachments. [90] ¶¶ 15–16. That is all Extra Logistics did. It failed to point to "specific references" in the record showing otherwise, *see* [108] at 3–4; [90] ¶¶ 15–16, as it was required to do under the local rules. *See* LR 56.1(b)(3)(b) (each party opposing a motion for summary judgment must, in the case of disagreement, include "specific references to the affidavits, parts of the record, and other supporting materials relied upon"). *See also Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("[b]y supporting its motion for summary judgment with its Local Rule 56.1 statement, SBC shifted the burden of production to Raymond," though the "ultimate burden of persuasion remain[ed]" with the moving party). Extra Logistics was not required to "prove a negative"; it was required to produce some evidence to dispute Adriatic's evidence, and it failed to do so. *See* [102] at 4.

Repeating an argument from its reply, [93] at 3, Extra Logistics says that, because the version of the letter that Adriatic attached as an exhibit did not contain a copy of the form, *see* [78-8], and because Adriatic also affirmed that the exhibit was a "true and correct" copy of the letter, Adriatic admitted that the form was never sent.

6

[93] at 3; [102] at 3, 5; [111] at 4; [78-9] ¶ 3; [78-8]. But this is an inaccurate characterization of a non-dispositive admission. Adriatic affirmed only that the November 23, 2015 letter was a "true and accurate cop[y] of what [it] purport[s] to be." [78-9] ¶ 3. Adriatic never said that the exhibit included all of the enclosures originally sent with the November 23, 2015 letter, and affirming that an exhibit is authentic is not the same thing as affirming that nothing additional was included with the envelope that contained the exhibit. Nor is it the same thing as affirming that no other envelopes were sent.

Extra Logistics' new arguments (all of which could have been asserted earlier) do not clearly establish a manifest error of law, either. For instance, Extra Logistics points out that there is no copy of the Sworn Statement of Loss form in the record, and implies that, since there is evidence that the form does not exist at all, there is evidence that the form could never have been sent in the first place. [102] at 5. But the form's presence or absence in the record is a product of the parties' discovery efforts, and Extra Logistics' briefing never established that it asked for a copy of the form. Absent that request, the fact that it is missing is unremarkable.

Nor did my application of Federal Rule of Evidence 803(6)(B) "stretch" the rule "beyond its bounds." [102] at 5. That rule provides that certain types of evidence (in this case, a record "kept in the course of a regularly conducted activity") are not to be excluded as hearsay and may be introduced for the truth of the matter asserted. Fed. R. Evid. 803(6)(B). *See also* Fed. R. Evid. 801(c)(2). On November 23, 2015, Kathy Soleto sent a letter asserting that a copy of the Sworn Statement of Loss form was

7

included in the envelope along with the letter. [78-8]. I accepted this as evidence of the matter asserted (i.e., a copy of the Sworn Statement of Loss form was included in the letter) and that was a straightforward application of the business-record exception. *See* [97] at 4–5. Extra Logistics has not clearly identified a manifest error.

Nor was there manifest error in my application of (or declination to apply) Federal Rule of Evidence 803(7). First, Extra Logistics never advanced an argument in favor of applying Rule 803(7) in any of its previous briefing. *See* [80]; [89]; [93]. Second, Extra Logistics does not (and did not) present any evidence tending to show that a blank copy of the form would have been "regularly kept" in the file, *see* [102] at 6; [80]; [89]; [93], and Adriatic presented testimony making clear that such blank forms are not regularly kept. [91-1] at ¶ 3.[3] Extra Logistics failed to establish that the record was "regularly kept for a matter of that kind." Fed. R. Evid. 803(7)(B).[4]

Moreover, Extra Logistics misunderstands how 803(7)(C) works; the "lack of trustworthiness" cuts against, not for, Extra Logistics. *See* [102] at 5–6; [111] at 5–6. Adriatic can bar admission of the evidence if it can show that the "possible source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(7)(C). Even if Adriatic had regularly kept copies of all forms included with all correspondence, there is evidence that Soleto was unfastidious. [81-1] at 23

---

[3] Adriatic's assertion that they do not, as a matter of regular business, keep copies of blank forms in claims files does not create an issue of fact just because Adriatic also affirmed that the exhibit containing the November 23, 2015 letter was a true and correct copy. *See* [111] at 4. Considering the limited nature of what Adriatic affirmed when submitting the exhibit, [78-9] ¶ 3, the two statements are not, as Extra Logistics suggests, inconsistent.

[4] As a result, it is unimportant that Adriatic failed to address 803(7) in its response. *See* [111] at 5.

8

(describing Soleto's decision to send the follow-up letters as a "mistake"). That evidence undermines the inference Extra Logistics seeks to draw because it provides a reasonable alternative explanation for the form's absence from the record: oversight.

The fact that Soleto may have been unfastidious does not bring into question the application of 803(6)(B), either. *See* [111] at 4. Neither of the cases that Extra Logistics cited stand for the proposition that business records are ineligible for the hearsay exception simply because they are incomplete. *See Gold Emporium, Inc. v. Comm'r,* 910 F.2d 1374, 1379 (7th Cir. 1990) (witness's credibility undermined by fact that their business records incomplete); *Cent. Illinois Carpenters Health & Welfare Tr. Fund v. Struben*, No. 05-1094, 2009 WL 497393, at *11 (C.D. Ill. Feb. 24, 2009), *amended in part sub nom. Cent. Illinois Carpenters Health & Welfare Tr. Fund v. S & S Fashion Floors, Inc.*, No. 05-1094, 2009 WL 1064914 (C.D. Ill. Apr. 20, 2009) (under ERISA, incomplete business records were insufficient to raise defense to claim that unions were underpaid).

Even if Extra Logistics had met the requirements of Federal Rule of Evidence 803(7)(C), Extra Logistics presents very little evidence (none of it new) that would be allowed under exception. That evidence is limited to the unsupported assertion that that claim file did not contain a copy of the form, *see* [102] at 6, and, without citation to the record, that assertion is no less inadequate under Local Rule 56.1 than was Extra Logistics' initial denial of receipt.

9

Extra Logistics has failed to clearly establish a manifest error of law or fact with regard to the application of Section 2 in the August 21, 2018 order. Its motion to alter or amend the judgment is denied insofar as that motion addresses Section 2.

**C.     Section 1**

Extra Logistics argues that I erred by relying on Section 1 of the Adriatic policy. *See* [102] at 7. First, it says that neither party argued that Section 1 had been breached. [102] at 7; [97] at 9–10. This is not true. In its reply in support of its motion for summary judgment, Adriatic argued that "Extra Logistics failed to abide by both Section 1 and Section 2 of the Conditions Section of the Policy because at no time within sixty (60) days of November 20, 2015 did Extra Logistics provide Adriatic with sworn proof of loss as required under Section 1 or with a Sworn Statement of Loss in the form provided by Adriatic." [91] at 5. So Adriatic did not waive a Section 1 argument. In its reply in support of its motion for summary judgment, Extra Logistics argued that "Section 1 of the conditions section in the Policy calls for the providing of notice 'as soon as practical,'" and that it had "clearly complied with this provision because Adriatic was notified of the loss immediately." [93] at 3. Even if Extra Logistics did not explicitly argue that Section 1 applied, Adriatic did, and Extra Logistics acknowledged that the applicability of Section 1 was at issue when it argued that it had complied with Section 1. It is also not dispositive that Adriatic did not explicitly list Section 1 in its affirmative defenses, especially where Adriatic reserved the right to assert other affirmative defenses as it learned new information, [28] at 12, ¶ 22, and where the parties briefed and argued the issue. *DeValk Lincoln Mercury,*

*Inc. v. Ford Motor Co.*, 811 F.2d 326, 334 (7th Cir. 1987) ("when parties argue an affirmative defense in the district court, technical failure to plead the defense is not fatal"). I did not reach the issue *sua sponte* nor via a manifest error of law or fact.

And even if I had reached the issue *sua sponte*, it would not have been improper to do so because there was no material dispute about the critical fact (i.e., that Extra Logistics failed to provide the requisite form within sixty days), because Extra Logistics was given notice of its failure to comply with the notice and timing provisions of the policy, [81-6] at 1, and because Extra Logistics had already been given the opportunity to come forward with evidence to controvert that finding. *Osler Inst., Inc. v. Forde*, 333 F.3d 832, 836 (7th Cir. 2003) ("[w]hen there are no issues of material fact in dispute, a district court may grant summary judgment on its own motion-as long as the losing party is given notice and an opportunity to come forward with its evidence").

Nor was Section 2 the "controlling provision." [102] at 7–8. It is true that, when "a contract contains both general and specific provisions relating to the same subject matter, the specific provision controls." [102] at 7 (citing *Willison v. Econ. Fire & Cas. Co.*, 294 Ill.App.3d 793, 800 (4th Dist. 1998)). But the provisions at issue here did not "relate to the same subject matter." Section 2 related to the "proof of loss statement in the form supplied by the Company," and Section 1 related to the "report in writing" and the "detailed sworn proof of loss." [78-4] §§ 1–2. One was not a subset of the other—they describe three distinct requirements. *See id*. There is no need to apply

11

Section 2 in a way that overwrites section 1; both were breached, independently. *See* [97] at 10.

**D. Waiver**

Extra Logistics also argues that Adriatic waived the right to deny coverage under Section 2. It points out that "denial of coverage on one ground is a waiver as to other grounds." [102] at 8 (citing *Mathis v. Lumbermen's Mut. Cas. Ins. Co.*, 354 Ill.App.3d 854, 858 (5th Dist. 2004); *State Farm Mutual Automobile Insurance Co.*, 211 Ill.App.3d 617, 621 (1st Dist. 1991) (where the letter in question "specifically informed defendants that coverage would be afforded under the policy," the policy defense of late notice was waived); *Stoltz v. Nat'l Indem. Co. of Omaha, Neb.*, 345 Ill.App. 495, 502 (1st Dist. 1952)). According to Extra Logistics, like in the aforementioned cases, Adriatic's September 9, 2016 letter "clearly emphasized that it was denying the claim based on its conclusion that the items being hauled were not described in the Policy." [102] at 9; [81-6].

That is not quite right. The September 9, 2016 letter states that, after Adriatic "sent [Extra Logistics] claim forms requesting information from such as the bill of lading, copies of the tow charges, sub-haul agreements, etc.," and "in spite of several requests," Extra Logistics had "failed to present [its] claim." [81-6] at 1. After listing a number of other reasons that Adriatic believed justified exclusion (*see id.*, citing the belief that Extra Logistics was hauling oilfield equipment and/or machine parts and missing packing slips, and that the "load value for [the] trip was very much in excess of the limit of liability that [Extra Logistics] paid premium for"), Adriatic closed by

12

saying that "we are denying any and all liability for this loss for all of the aforementioned." [81-6] at 2. Rather than "clearly emphasiz[e]" the items being hauled, the letter attributes the application of the exclusionary provision to every reason cited in the letter, equally, including Extra Logistics' failure to present its claim.

Nor was the decision "clearly erroneous" in light of the holding in *Cowan v. Ins. Co. of N. Am.*, 22 Ill.App.3d 883 (1st Dist. 1974) (which, again, Extra Logistics did not cite in any of its earlier briefing; *see* [80]; [89]; [93]). In *Cowan*, the court held that a "bare notice of a reservation of rights is insufficient unless it makes specific reference to the policy defense which may ultimately be asserted and to the potential conflict of interest." *Id.* at 893. The rule was motivated by a "potential conflict of interest" that is not present here: in *Cowan*, a policy defense depended on facts that were to be determined as part of underlying litigation that Cowan's insurance company was offering to defend, and the court found it important that Cowan be informed about this potential conflict so that Cowan could decide whether to retain different counsel. Here, there is no underlying litigation, and no policy defense that may turn on facts that Adriatic could have developed in that underlying litigation.[5] In any event, Adriatic's letter did much more than provide the "bare notice of a reservation of rights" required by *Cowan*; it laid out multiple reasons that the exclusionary clause

---

[5] As Adriatic points out, the paragraph that contains the rule in *Cowan* begins with the caveat, "[i]n defending an action against the insured when the existence of a policy defense may turn upon facts to be determined in that litigation . . ." *Id.* at 893. It is not clear that the rule applies here, where there are no facts to be determined as part of underlying litigation.

13

applied and included facts from which Extra Logistics could easily have determined which policy provisions had been breached. *See* [78-4] §§ 1–2. It did not refer to a potential conflict of interest because none existed. *See id.*

Nor did Adriatic waive its arguments about section 2 when it sent follow-up requests for proof of loss forms on December 7, 2016, and December 21, 2016. *See* [102] at 9–10; [81-1] at 155–156. Extra Logistics argues that this conduct was "inconsistent with the assertion of the defenses" and that, from these letters, it "may be clearly inferred that the insurer intended to waive the failure to comply with the proof of loss provision." [102] at 10.

In support, Extra Logistics cites *Kenilworth Ins. Co. v. McDougal,* 20 Ill.App.3d 615, 620 (2nd Dist. 1974) and *McMahon v. Coronet Ins. Co.*, 6 Ill.App.3d 704, 708 (1st Dist. 1972). [102] at 10; [111] at 6–7. It cites the former for the proposition that "[i]f the insurance company is fully advised of the facts bearing on its policy defense and does not then insist on noncoverage but recognizes the continued validity of the policy by requiring the insured to go to the trouble and expense, if any, of preparing proofs of loss and related matter, an intention to waive the policy defense would follow." *Kenilworth,* 20 Ill.App.3d at 620. The proof required to show waiver in *Kenilworth* was "such facts as would make it unjust, inequitable or unconscionable to allow the defense to be interposed." *Id.* And *Kenilworth* stressed that prejudice to the insured was important to a finding of waiver. *Id.* Again, Extra Logistics did not cite this case or raise this argument in any of its prior briefing. *See* [80]; [89]; [93].

14

In *McMahon,* the court waived a requirement that the plaintiff submit a sworn statement within thirty days because the defendant's conduct "created in plaintiffs a reasonable belief that it was not necessary for them strictly to comply with the letter of this condition in the policy." 6 Ill.App.3d at 708. But there, the defendant "never, until the time of trial . . . [brought] th[e] policy provision to the attention of plaintiffs or require[d] or request[ed] their compliance." *Id*.

Neither *Kenilworth* nor *McMahon* clearly establish a manifest error of law or fact in the August 21, 2018 opinion. Unlike in *Kenilworth*, Adriatic did insist on noncoverage; both its September 9, 2015 and December 21, 2016 letters indicate that Extra Logistics' file was closed for (among other things) Extra Logistics' failure to comply with the requirement that Extra Logistics submit the form. *See* [81-1] at 155; [81-6] at 1. *Kenilworth Ins. Co.*, 20 Ill.App.3d at 620. And unlike in *McMahon*, Adriatic repeatedly both requested Extra Logistics' compliance and brought the failure to comply to Extra Logistics' attention, long before trial. *McMahon*, 6 Ill.App.3d at 708; [81-1] at 155; [81-6].

It is also not "unjust, inequitable or unconscionable" to decline to find that the provision was waived, nor would doing so prejudice Extra Logistics. *See* [102] at 10. By the time Extra Logistics received the December 21, 2016 letter, more than a year had passed since it missed its initial deadline. *See* [81-1] at 155; [81-6] at 1; [78-4] § 2. Extra Logistics did not rely on Adriatic's waiver and a finding otherwise would have been an unexpected, after-the-fact windfall. The denial of that windfall is not prejudicial.

Moreover, Adriatic's decision to include additional copies of the Sworn Statement of Loss form in its December 7, 2016 letter is inconsistent with an intent to waive the requirement entirely. *See* [81-1] at 156. Adriatic's course of conduct at most indicated a willingness to extend the 60-day deadline. *See* [78-4] § 2. But even then, the express terms of section 2 required that any extensions of time be granted in writing, *id.*, and parol evidence cannot be used to vary the unambiguous, express terms of the contract. *Main Bank of Chicago v. Baker*, 86 Ill.2d 188, 199 (1981). Even if Adriatic's course of conduct indicated a willingness to waive the deadline, such conduct would have been ineffective. *See id.* Extra Logistics seems to agree that Adriatic did not waive the requirement entirely, *see* [102] at 10 (the December 7, 2016 and December 12, 2016 letters were "not a mistake but an attempt to trigger the proof of loss requirements that had not yet been triggered"), but nonetheless has still failed to submit a completed copy of the form. *See* [90] ¶ 22.

Extra Logistics also says that it "provided responses to the requests" (presumably referring to the December letters). [102] at 11. But it cites no evidence for this assertion and, in any event, any response other than a completed copy of the form would have been insufficient.

And lastly, Extra Logistics cites to deposition testimony from Joseph E. Taylor, Adriatic's 30(b)(6) witness, *see* [81-1] at 3, in which Taylor acknowledges that the Sworn Statement of Loss form was "more so or less" used to verify information that was provided as part of the "application and the loss." [102] at 11; [81-1] at 28. Extra Logistics argues that this shows that Adriatic already "had in its possession all the

16

documents that would have been included on the proof of loss form." [102] at 11. It does not. And even if it did, such an admission would not invalidate the contractual provision (that Extra Logistics agreed too) establishing that Extra Logistics was required to submit the form—even if it was duplicative of other information Adriatic had on file. For all of these reasons, and even in light of the rule of law that exclusionary provisions are easily waived, *O'Brien*, 105 Ill.App.2d at 23–24, I find that Extra Logistics has failed to clearly demonstrate a manifest error of fact or law on the issue of waiver.

### E. Section 14 and MFT-6

Extra Logistics also argues that there were manifest errors in those portions of the August 21, 2018 order that related to misrepresentation and unauthorized drivers. [102] at 11–15. None of those arguments clearly establish a manifest error of fact or law. Regardless, because I find that there was no manifest error in my application of sections 1 and 2, and because those provisions are sufficient to establish that all of Extra Logistics' claims are excluded under the policies, I do not need to (and decline to) address the arguments Extra Logistics advances about section 14 and MFT-6.

## IV. Conclusion

Extra Logistics' motion to alter the judgment, [102], is denied.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: January 14, 2019